# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ALABAMA

**MARINA KRISHMAR-JUNKER, an**

      **individual**

      **Plaintiff,**

**v.**

**KINGLINE EQUIPMENT, INC., a foreign**

**corporation**

      **Defendant.**

_____ /

**Case No.: 23-CV-431-KD-B**

FILED NOV 14 '23 PM 4:52 USDC-ALS

## COMPLAINT

COMES NOW Plaintiff, MARINA KRISHMAR-JUNKER ("Plaintiff"), and hereby sues

Defendant, Kingline Equipment, Inc. ("KINGLINE" or "Defendant"), and alleges as follows:

1. This is an action for damages exceeding SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of costs and interest.

2. At all times material to this action, Plaintiff was a natural person residing in Baldwin County, Alabama.

3. KINGLINE is a Florida for-profit corporation, located at 3221 Highway 29 South in the city of Cantonment, Florida.

4. KINGLINE operates as a foreign corporation in Alabama at the address 19425 State Highway 59, in Summerdale, AL.

1

5.  Venue is proper in this Court as the incidences which gave rise to this action occurred within the Southern District of Alabama in Baldwin County.

6.   This Court has diversity jurisdiction over these parties and matters under 28 U.S. Code § 1332.

7.  This Court has subject-matter jurisdiction over these matters under 15 U.S.C. § 2301 et seq.

8.  This Court has personal jurisdiction over the Defendant under Fed. R. Civ. P. 4(k)(1)(a).

## GENERAL ALLEGATIONS

9.  On July 29, 2021, Plaintiff entered into an agreement with the defendant, Kingline Equipment, Inc. ("KINGLINE"), to buy a brand-new New Holland Workmaster-75 Tractor for the amount of $49,659.08.

10. Following the purchase delivery, Plaintiff discovered the first issue with the tractor. The attachment receptacle was defective and did not fit with the manufacturer's forklift attachment, so the tractor was not utilized for several months while a KINGLINE salesperson ordered an off-market forklift attachment as a replacement.

11. The brand-new tractor was first utilized for a task to unload Plaintiff's belongings on or about May 3rd, 2022. After about 30 minutes of operation, the tractor's belt fell off and appeared shredded, causing the tractor to stop working.

12. On or about May 3rd, 2022, Plaintiff contacted KINGLINE regarding warranty repair to repair the tractor's fallen-off shredded belt.

13. On or about May 4th, 2022, KINGLINE employees picked up the tractor and brought it to their Summerdale facility for warranty repairs. The tractor had 4 hours on its engine indicator at the time.

14. On May 4th, 2022, the Defendant KINGLINE took possession of the Workmaster75 for repairs, and the tractor has remained with KINGLINE ever since.

15. Although not in possession of the tractor, Plaintiff continues to submit payments as per contract to the loan obtained from CNH Capital, a financial subsidiary of New Holland, Inc., in the amount of $861.00 each month. (Please see EXHIBIT A).

16. On or about May 6th, 2022, during Plaintiff's initial phone conversation with KINGLINE's service department, Plaintiff was told the tractor's fallen and shredded belt was a known defect from the manufacturer's erroneous painting of the belt's pulleys, and Plaintiff received the estimate that the tractor will be ready in about 2 weeks due to the waiting time to order and receive new belt and pulleys.

17. Without explanation, Kingline held the tractor for over 2 months.

18. During such time, KINGLINE failed to contact Plaintiff about the repairs undertaken or the repair progress.

19. On or about June 15, 2022, Plaintiff visited KINGLINE's Summerdale facility and saw her tractor in a disassembled condition with its parts all over the floor. Plaintiff spoke with the young man apparently working on the tractor, who stated that he cannot fix it, and that since the tractor had only 7 hours on its indicator at the time, it should be replaced by the dealer for a new tractor, since the tractor had less hours on it than some of the new for-sale tractors on the dealer's lot.

20. According to service preliminary documents, the new belt and pulleys were installed initially, and then reordered and installed again, along with a new alternator, new thermostat, new water pump, and new belt tensioner (Please see EXHIBIT B, all pages, and EXHIBIT C, all pages).

21. KINGLINE provided no explanation to Plaintiff for conducting the extensive parts replacements, which occurred over the period of two months instead of the quoted two weeks.

22. On or about June 22, 2022, during a call initiated by the Plaintiff with KINGLINE, the Plaintiff was referred to over the phone as "the other woman with a funny accent" by an employee named Jerry and was informed the facility was waiting for more parts.

23. The Plaintiff believes that the above-mentioned employee, Jerry, is the manager of the Summerdale KINGLINE facility.

24. On or about July 19th, 2022, after over 2 months in the repair facility and without communications from KINGLINE, Plaintiff contacted the New Holland Customer Relations team to receive a dealer response from KINGLINE.

25. On or about July 20th, 2022, Plaintiff received a call from the KINGLINE employee named Matt Mitake, who stated that the dealer will consider exchanging the tractor for a new one, but only after they finish the repairs on Plaintiff's tractor first.

26. On or about July 22nd, 2022, KINGLINE employee Matt Mitake called Plaintiff to inform that the tractor was repaired and ready for pick up.

27. Upon arrival to receive the tractor, Plaintiff noticed that the tractor was highly soiled with white residue spots throughout its interior and exterior, had a rusted frame, and that a plastic cover on the tractor was apparently pried with a crowbar and broken.

4

28. Plaintiff immediately brought these issues to the attention of KINGLINE employee Jerry and expressed concern over the apparent improper tractor repair and handling, to which Jerry accused Plaintiff of being 'knit-picky,' and refused to remedy any damage caused by the KINGLINE mechanics. He further responded that it was 4:00 p.m. and that the business was now closed, and that the Plaintiff must leave, although the hours posted by the business stated hours that were until 4:30 p.m.

29. On or about August 5th, 2022, Plaintiff returned to the Summerdale facility to receive the tractor. Plaintiff attempted to conduct an inspection of the tractor, and became aware of the existence of defects such as the following:

   a. Pry bar marks and damage to the engine cover from improper removal, being apparently pried open with a crowbar. (Please see EXHIBIT D)

   b. Surface gashes on the machined drive shaft, appearing to be the tool marks of a monkey wrench used in plumbing. (Please see EXHIBIT E)

   c. A loose bolt on the manifold junction. (Please see EXHIBIT F)

   d. White saline-type spots left on surfaces throughout the exterior of the tractor and the cab interior, likely caused by a leak of the water pump manifold due to improper attachment, as reported in the dealer's preliminary service report.

   e. Frame surface rust, due to damaged paint from improper handling of the unit during transportation as admitted by a KINGLINE employee. (Please see EXHIBIT G)

30. The extent and existence of all defects and damage is still not known, as KINGLINE employee Jerry did not allow the Plaintiff to conduct any further inspection of the tractor.

31. Plaintiff asked the employee Jerry if she could be provided with any written final documentation of the completed repairs, and if a licensed mechanic may inspect the tractor, but Jerry denied these requests and told Plaintiff to leave. Plaintiff left unable to further inspect the tractor and without a final written statement of completed repairs.

32. The Plaintiff observed that one of the KINGLINE employees was videotaping her during her visit to KINGLINE's Summerdale facility on August 5th, 2022.

33. After the Plaintiff left KINGLINE facility, the auto she was traveling in was stopped on Hwy 59 by Summerdale police officer Tim Thompson about a mile away from KINGLINE's facility. Officer Thompson asked Plaintiff what happened at KINGLINE's facility and stated that KINGLINE called the police due to an incident at KINGLINE's premises. The plaintiff was astonished by this and informed Officer Thompson that she was unaware of any incident occurring at KINGLINE, and that her visit was videotaped by a KINGLINE employee.

34. Furthermore, on or about August 5th, 2022, Plaintiff called the New Holland Customer Relations team to report the events occurring at the dealership and was advised to open a claim with their insurance company for the tractor.

35. Plaintiff contacted the insurance company for tractor, Wesco claim number #3543458, regarding the damage caused by KINGLINE to her tractor, and received an agent response that "mechanic's vandalism" is not covered.

36. Since August 5th, 2022, the Plaintiff has not received any direct communications from KINGLINE.

37. On or about September 13th, 2022, Plaintiff filed a complaint against KINGLINE with the Alabama State Attorney General.

38. On or about October 10th, 2022, KINGLINE replied to Plaintiff's complaint with the Attorney General and stated the following:

    a.  The Plaintiff and her family members are not allowed at KINGLINE'S location.

    b.  The tractor must be picked up by a third party.

39. On or about January 26th, 2023, Plaintiff contacted an attorney who reached out to KINGLINE, who informed the attorney that Plaintiff must seek a third party to retrieve the tractor.

40. Plaintiff contacted local third-party mechanics, but the only New Holland mechanic in the area was unwilling to be involved.

41. The Defendant has effectively barred Plaintiff from inspecting and picking up her tractor.

42. Plaintiff is unable to employ a third party to pick up the tractor in an unknown condition from the KINGLINE facility which refuses services.

43. On or about December 21st, 2022, the Plaintiff wrote a letter to the President of Kingline Equipment, Inc., Gregory Todd King, regarding the circumstances of her tractor and requested a refund. The letter was sent through certified mail, but the Plaintiff never received a response. (Please see Exhibit H and I)

44. KINGLINE has not communicated with and ignores the Plaintiff, which makes her feel belittled and inferior being a "woman with a funny accent." Plaintiff believes she would have been treated differently if she was a male from the local area without an accent. The lack of service and poor treatment from KINGLINE causes severe discomfort and emotional distress to Plaintiff.

45. KINGLINE consciously disregards the hardships which its conduct continues to inflict on the Plaintiff, such as Plaintiff's burdensome financial obligations, emotional distress, and the inability to use or tend to her land.

## FIRST CAUSE OF ACTION

### NEGLIGENCE

46. Plaintiff herein incorporates by reference the facts stated in paragraphs 1-44.

47. KINGLINE has a duty to act reasonably in providing dealer services to customers.

48. KINGLINE owed Plaintiff a duty to conduct a professional repair of the tractor under generally accepted standards, and to not cause harm or damage to Plaintiff's property.

49. KINGLINE breached this duty by causing damage to Plaintiff's tractor, evidenced by the surface damage causing frame rust, broken parts, soiled interiors, marks left by the forceful usage of improper tools such as crow bars and monkey wrenches, and other defects, all which demonstrate KINGLINE's unsatisfactory repair and unprofessional, reckless treatment of the tractor.

50. KINGLINE has caused harm to Plaintiff through providing an unacceptable repair of her tractor, resulting in a far-diminished value and condition from the brand-new state the tractor was purchased for at full price.

51. Further, due to KINGLINE's improper service, Plaintiff is deprived of her tractor and has not been able to sufficiently maintain her property without the use of the tractor, which has resulted in the loss of land use, lack of land maintenance, and the loss of about 100 planted fruit trees which died in high density overgrown vegetation. (Please see EXHIBIT J)

52. Plaintiff's brand-new attachments to the tractor, such as a bush hog, disc harrow, and rotary tiller, are subjected to rust from the elements, theft, and vandalism, as they cannot be moved under a safe shelter without a tractor. Plaintiff is further unable to obtain another tractor due to the financial burden and preexisting obligation towards paying the ongoing monthly payment of $861.00 for the tractor she purchased from KINGLINE.

53. Further, because of the negative experiences inflicted by KINGLINE upon Plaintiff, such as being unfairly treated, slandered, ignored, and deceived, she suffers daily stress and emotional anguish. Plaintiff's land is dangerous due to wildlife present in the extreme overgrowth, and the plaintiff's family is unable to care for, use, or enjoy the property.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT

54. Plaintiff herein incorporates by reference the facts stated in paragraphs 1-44.

55. Plaintiff and KINGLINE were parties to an agreement for the sale of a new tractor.

56. Since July 2021, Plaintiff continuously pays for the tractor in the amount of $861.00 each month.

57. Defendant KINGLINE performed questionable, lengthy repairs that resulted in damage to the tractor and does not permit the tractor to undergo inspections. KINGLINE completely ignores the Plaintiff and does not initiate contact with her or respond to her requests.

58. As a result of KINGLINE's actions, Plaintiff has been deprived of her benefit to the purchase and is financially suffering with the burden of making an $861 payment each month paid for with limited funds from a retirement pension.

59. Plaintiff has suffered loss of the tractor, and due to the lack of a tractor, has suffered damages to her brand-new purchased tractor-fitted attachments from the inability to move and maintain them without the tractor, and is left unable to maintain the land, causing a loss of fruit trees and the inability to use and enjoy the property purchased for retirement.

## THIRD CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

## U.C.C. § 1-304

60. Plaintiff herein incorporates by reference the facts stated in paragraphs 1-44.

61. The agreement between Plaintiff and KINGLINE contained no provisions and is ambiguous regarding the poor conduct and service standards which KINGLINE provided.

62. KINGLINE has failed to discharge contractual responsibilities in a competent manner, which has frustrated Plaintiff's purpose of purchasing a brand-new tractor, caused significant financial hardship onto Plaintiff, and severely disappointed her expectations by causing emotional distress.

63. KINGLINE has dismissed the dealer-customer relationship with Plaintiff, which further frustrates Plaintiff's use of the tractor as the ability to receive future dealer support and services for the tractor is terminated.

64. Because of KINGLINE's breach, Plaintiff has been deprived of the agreement's benefits, as she does not possess a tractor in consideration for her continuing monthly payments.

65. Plaintiff has suffered damages such as the loss of a brand-new tractor, damage to the tractor-fitted attachments for use with the tractor, harm to her property through overgrowth which attracts vermin and theft, and a loss of trees.

**FOURTH CAUSE OF ACTION**

**DECEPTIVE TRADE PRACTICES**

**Ala. Code § 8-19-5(27)**

66. Plaintiff herein incorporates by reference the facts stated in paragraphs 1-44.

67. KINGLINE misrepresented the quality of the work performed and knowingly and willingly denied or ignored the existence of material defects inflicted by KINGLINE's repair services.

68. KINGLINE made false statements to the police against the Plaintiff as to her character and conduct, to avoid conveying reasonable service and to unjustly bar customer relations with Plaintiff and slander her character by defamation.

69. Upon such information and belief as stated in the above paragraph, Plaintiff believes Defendant called the police as an intentional act of harassment against the Plaintiff to cover KINGLINE's improper business practices and the questionable repairs provided.

70. Plaintiff believes that the unclear notes and repairs provided by KINGLINE warrant the suspicion of an intent to defraud Plaintiff and the insurance company.

71. KINGLINE initially represented to Plaintiff that the tractor's issue was due to a simple paint error, but instead performed extensive and unexplained repairs on the tractor. KINGLINE has never explained to Plaintiff the reasoning for such work.

72. KINGLINE did not consider Plaintiff's concerns over the tractor after repair service and has refused to address any of the issues pointed out by Plaintiff, nor permit her to further view her tractor.

73. KINGLINE maliciously bars Plaintiff from inspecting and personally receiving her tractor. Plaintiff believes KINGLINE bars her from inspecting the tractor to conceal faulty workmanship and avoid responsibility for the damages.

74. Plaintiff was apprehensive to accept KINGLINE's delivery of the tractor until a proper inspection was conducted due to visible improper work and damages on the tractor that arose under KINGLINE's care, which would have otherwise become concealed once the Plaintiff took delivery. The poor work and damage being inflicted on the tractor by a professional dealer would then have become an unbelievable claim, as no one would believe a professional dealership could perform such poor service.

75. Plaintiff has business and consumer experience spanning over 40 years and has never experienced the business conduct KINGLINE has engaged upon regarding her as a customer. As a result of KINGLINE's poor treatment of Plaintiff, she has been left apprehensive to contract with local businesses ever again.

76. KINGLINE has maliciously ignored Plaintiff as a customer, as she has not received any direct communications from KINGLINE since August 5th, 2022.

/ / /

## FIFTH CAUSE OF ACTION

### MAGNUSSON-MOSS WARRANTY ACT

#### 15 U.S.C. § 2301 et seq.

77. Plaintiff herein incorporates by reference the facts stated in paragraphs 1-44, 59-75.

78. Plaintiff is a consumer who purchased the tractor from KINGLINE as an individual.

79. Plaintiff purchased the Workmaster75 tractor, including air conditioning and radio, for consumer use to maintain the 26-acres of land adjacent to her home.

80. KINGLINE acted as a supplier and warrantor in supplying the tractor, including warranties, to Plaintiff.

81. KINGLINE has failed to conform to the written warrant under a reasonable time period and without charge, has breached an implied warranty under Alabama law, and has breached a duty imposed by the Uniform Commercial Code.

## SIXTH CAUSE OF ACTION

### PUNITIVE DAMAGES

#### Ala. Code § 6-11-20

82. Plaintiff herein incorporates by reference the facts stated in paragraphs 1-44, 60-75.

83. KINGLINE engaged in malice by intentionally conducting wrongful acts without just cause or excuse, such as by slandering and libeling Plaintiff's character, maliciously contacting the police department to intentionally inflict emotional distress on the Plaintiff, and maliciously mistreating the Plaintiff and referring to her as the "other woman with a funny accent."

84. Evidentially, KINGLINE may treat their customers maliciously or unfairly according to a complaint made to the Better Business Bureau ("the BBB") by an unrelated

customer, stating that the Defendant of this action may have familial ties with local law enforcement which the Defendant may illegally utilize. (Please see Exhibit K, #1). In another unrelated complaint filed with the BBB, KINGLINE engages in similar oppression upon another customer who was led to forfeit their equipment purchased from KINGLINE suffering a financial loss. (Please see Exhibit K, #2).

85. KINGLINE engaged in wantonness by conducting a reckless repair in disregard of the Plaintiff's rights and safety as evidenced by KINGLINE's use of improper tools, unsecured bolts, and damaged parts on the tractor.

86. KINGLINE consciously subjects Plaintiff to cruel and unjust hardship by refusing to honor contractual obligations in conscious disregard of Plaintiff's rights and ongoing financial obligations.

87. KINGLINE engaged in the above conduct with an intent to injure the Plaintiff and deprive her of her rights and property.

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following:

    a. Rescission of the contract involved herein, restoring Plaintiff to a state prior to the purchase.

    b. The refund of Plaintiff's made payments and the cessation of future payments.

    c. Incidental and consequential damages for harm incurred by Plaintiff, such as the high cost of restoring the land to its maintain condition, the loss of fruit trees, damage to new attachments due to the inability to properly store and maintain them, the cost of services and maintenance, and other incidences in the sum to be determined.

    d. Grant compensatory and treble damages

e.  Grant punitive damages

f.  Grant fees and costs

g.  Grant any other relief which the Court deems just and proper.

Dated this 7th of November 2023,

Respectfully
M. Krishmar Junker

Marina Krishmar-Junker, Pro Se

(310) 345-7585

245 E 22nd Avenue

Gulf Shores, AL 36542