**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

MARINA KRISHMAR-JUNKER,       *
                                        *
      Plaintiff,             *
                                        *
vs.                                 *    **CIVIL ACTION NO. 23-00431-KD-B**
                                        *
KINGLINE EQUIPMENT, INC.,      *
                                        *
      Defendant.           *

## REPORT AND RECOMMENDATION

This action is before the Court on Defendant Kingline Equipment, Inc.'s motion to dismiss (Doc. 8). The motion has been referred to the undersigned Magistrate Judge for consideration and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Defendant's motion be **GRANTED in part** and **DENIED in part**.

## I.   BACKGROUND

Plaintiff Marina Krishmar-Junker ("Krishmar-Junker"), who is proceeding without counsel, filed a complaint against Defendant Kingline Equipment, Inc. ("Kingline") and paid the filing fee for a civil action. (Doc. 1).

In her complaint, Krishmar-Junker alleges that she is "a natural person residing in Baldwin County, Alabama." (Id. at 1). Krishmar-Junker states that Kingline "is a Florida for-profit corporation" that "operates as a foreign corporation in Alabama at

the address 19425 State Highway 59, in Summerdale, [Alabama]." (Id.). Krishmar-Junker asserts that this Court "has diversity jurisdiction over these parties and matters under 28 U.S.C. § 1332" and also "has subject-matter jurisdiction over these matters under 15 U.S.C. § 2301 et seq." (Id. at 2). She alleges that venue is proper in this Court because "the incidences which gave rise to this action occurred within the Southern District of Alabama in Baldwin County." (Id.).

In her general allegations, Krishmar-Junker alleges that on July 29, 2021, she "entered into an agreement with [Kingline] to buy a brand-new New Holland Workmaster-75 Tractor" (the "Tractor") "for the amount of $49,659.08." (Id.). Krishmar-Junker states that after delivery, she discovered the first issue with the Tractor, so the Tractor went unused for several months while a Kingline salesperson ordered a replacement part. (Id.).

Krishmar-Junker alleges that she first used the Tractor on May 3, 2022, but after about thirty minutes of operation, the Tractor's belt fell off and appeared to be shredded, causing the Tractor to stop working. (Id.). Krishmar-Junker contacted Kingline to request repairs under the Tractor's warranty. (Id.). On May 4, 2022, Kingline employees picked up and transported the Tractor to Kingline's facility in Summerdale, Alabama for warranty repairs. (Id. at 3). The Tractor "had 4 hours on its engine indicator at the time." (Id.).

Krishmar-Junker states that Kingline "took possession" of the Tractor to conduct repairs on May 4, 2022, and that the Tractor "has remained with [Kingline] ever since." (Id.). Despite not having possession of the Tractor, Krishmar-Junker has continued "to submit payments as per contract to the loan obtained from CNH Capital, a financial subsidiary of New Holland, Inc., in the amount of $861.00 each month." (Id.).

Krishmar-Junker alleges that during her initial phone conversation with Kingline's service department on May 6, 2022, she was told that the Tractor's "fallen and shredded belt was a known defect from the manufacturer's erroneous painting of the belt's pulleys." (Id.). She "received an estimate" that the Tractor would "be ready in about 2 weeks due to the waiting time to order and receive new belt and pulleys." (Id.).

On June 15, 2022, Krishmar-Junker "visited" Kingline's Summerdale facility and saw her Tractor "in a disassembled condition with its parts all over the floor." (Id.). Krishmar-Junker spoke with the Kingline employee "apparently working on" the Tractor, who told her he could not fix it and that "it should be replaced by the dealer for a new tractor, since the [Tractor] had less hours on it than some of the new for-sale tractors on the dealer's lot." (Id.). Krishmar-Junker states that according to preliminary service documents, "the new belt and pulleys were installed initially, and then reordered and installed again, along

with a new alternator, new thermostat, new water pump, and new belt tensioner." (Id. at 4). Krishmar-Junker alleges that Kingline "provided no explanation" as to why it conducted these "extensive parts replacements, which occurred over the period of two months instead of the quoted two weeks." (Id.).

Krishmar-Junker alleges that when she called Kingline on June 22, 2022, an employee named "Jerry" called her "the other woman with a funny accent" and informed her that the facility was waiting for more parts. (Id.). Krishmar-Junker "believes that the above-mentioned employee, Jerry, is the manager" of Kingline's Summerdale facility. (Id.).

On July 19, 2022, after the Tractor had been at the repair facility for more than two months, Krishmar-Junker "contacted the New Holland Customer relations team to receive a dealer response from [Kingline]." (Id.). Krishmar-Junker alleges that she received a call from a Kingline employee the next day, who informed her "that the dealer [would] consider exchanging the [Tractor] for a new one," but only after the repairs on her Tractor were completed. (Id.). On July 22, 2022, the same Kingline employee called Krishmar-Junker to inform her that the Tractor had been repaired and was ready for pickup. (Id.).

Krishmar-Junker alleges that "[u]pon arrival to receive the [Tractor]," she "noticed" that it "was highly soiled with white residue spots throughout its interior and exterior, had a rusted

frame, and that a plastic cover on the [Tractor] was apparently pried with a crowbar and broken." (Id.). Krishmar-Junker states that when she brought these issues to the attention of Kingline employee "Jerry" and "expressed concern over the apparent improper tractor repair and handling," he accused her of being "knit-picky" and refused to remedy any damage caused by the Kingline mechanics. (Id. at 5). Krishmar-Junker alleges that "Jerry" also told her the facility was closed and she had to leave, despite the facility's posted business hours showing that it was open for another thirty minutes. (Id.).

On August 5, 2022, Krishmar-Junker returned to Kingline's Summerdale facility "to receive the [Tractor]." (Id.). At that time, she attempted to inspect the Tractor and allegedly "became aware" of a number of "defects" and damages, including pry marks and damage to the engine cover as a result of apparently being pried open with a crowbar, surface gashes on the machined drive shaft, a loose bolt on the manifold junction, white "saline-type spots" left on surfaces throughout the Tractor's exterior and cab interior, and frame surface rust caused by "damaged paint from improper handling of the unit during transportation as admitted by a [Kingline] employee." (Id.). Krishmar-Junker alleges that she was unable to determine the "extent and existence of all defects and damage" to the Tractor because Kingline employee "Jerry" did not allow her to conduct any further inspection of the Tractor.

(Id.). Krishmar-Junker asked to be provided with written final documentation of the completed repairs, and she also asked if a licensed mechanic could inspect the Tractor. (Id. at 6). Krishmar-Junker alleges that Kingline employee "Jerry" denied those requests and told her "to leave" the facility. (Id.).

Krishmar-Junker alleges that she observed a Kingline employee videotaping her during her visit to the Summerdale facility on August 5, 2022. (Id.). Krishmar-Junker further alleges that a Summerdale police officer stopped her car shortly after she left the facility, asked her what had happened at the facility, and informed her that Kingline had called the police due to an incident on its premises. (Id.). Krishmar-Junker "informed" the officer "that she was unaware of any incident occurring" at the Kingline facility, and that her visit had been videotaped by a Kingline employee. (Id.).

Later that day, Krishmar-Junker "called the New Holland Customer Relations team to report the events occurring at the dealership and was advised to open a claim with their insurance company for the [Tractor]." (Id.). Krishmar-Junker contacted the insurance company as directed, but an agent advised her "that 'mechanic's vandalism' is not covered." (Id.). According to Krishmar-Junker, she "has not received any direct communications" from Kingline since August 5, 2022. (Id.).

On September 13, 2022, Krishmar-Junker filed a complaint against Kingline with the Attorney General of Alabama. (Id.). On October 10, 2022, Kingline replied to the complaint and stated that Krishmar-Junker and her family members "are not allowed" at its facility, and that the Tractor "must be picked up by a third party." (Id. at 7). On December 21, 2022, Krishmar-Junker "wrote a letter" to Kingline's president "regarding the circumstances of her [Tractor] and requested a refund." (Id.). "The letter was sent through certified mail," but Krishmar-Junker "never received a response." (Id.).

On January 26, 2023, an attorney reached out to Kingline on Krishmar-Junker's behalf and was informed that Krishmar-Junker "must seek a third party to retrieve the [Tractor]." (Id.). Krishmar-Junker "contacted local third-party mechanics, but the only New Holland mechanic in the area was unwilling to be involved." (Id.). Krishmar-Junker alleges that she "is unable to employ a third party to pick up the [Tractor] in an unknown condition from the [Kingline] facility which refuses services." (Id.). Thus, Krishmar-Junker contends that Kingline has "effectively barred" her "from inspecting and picking up her [Tractor]." (Id.).

In count one ("Negligence"), Krishmar-Junker alleges that Kingline "has a duty to act reasonably in providing dealer services to customers" and owed her "a duty to conduct a professional repair

of the [Tractor] under generally accepted standards, and to not cause harm or damage to [her] property." (Id. at 8). Krishmar-Junker alleges that Kingline "breached this duty by causing damage" to her Tractor, "evidenced by the surface damage causing frame rust, broken parts, soiled interiors, marks left by the forceful usage of improper tools such as crow bars and monkey wrenches, and other defects" demonstrating Kingline's "unsatisfactory repair and unprofessional, reckless treatment" of the Tractor. (Id.). Krishmar-Junker alleges that Kingline has harmed her by "providing an unacceptable repair" of her Tractor, "resulting in a far-diminished value and condition from the brand-new state the [Tractor] was purchased for at full price." (Id.). Krishmar-Junker further alleges that as a result of Kingline's "improper service," she "is deprived of her [Tractor] and has not been able to sufficiently maintain her property without the use of the [Tractor], which has resulted in the loss of land use, lack of land maintenance, and the loss of about 100 planted fruit tress which died in high density overgrown vegetation." (Id.). Krishmar-Junker also asserts that her "brand-new attachments" to the Tractor, "such as a bush hog, disc harrow, and rotary tiller, are subjected to rust from the elements, theft, and vandalism" because they "cannot be moved under a safe shelter without a tractor." (Id. at 9). Additionally, Krishmar-Junker states that her land "is dangerous due to wildlife present in the extreme

overgrowth," and that her "family is unable to care for, use, or enjoy the property." (Id.). Krishmar-Junker alleges that "because of the negative experiences inflicted" upon her by Kingline, "such as being unfairly treated, slandered, ignored, and deceived, she suffers daily stress and emotional anguish." (Id.).

In count two ("Breach of Contract"), Krishmar-Junker alleges that she and Kingline "were parties to an agreement for the sale of a new tractor." (Id.). Krishmar-Junker states that since July 2021, she "continuously pays for the [Tractor] in the amount of $861.00 each month." (Id.). Krishmar-Junker alleges that Kingline "performed questionable, lengthy repairs that resulted in damage" to the Tractor, it refuses to allow the Tractor to be inspected, and it "completely ignores [Krishmar-Junker] and does not initiate contact with her or respond to her requests." (Id.). Krishmar-Junker alleges that as a result of Kingline's actions, she "has been deprived of her benefit to the purchase and is financially suffering with the burden of making an $861 payment each month" for the Tractor, which she is unable to use and enjoy. (Id. at 10).

In count three ("Breach of Implied Covenant of Good Faith & Fair Dealing – U.C.C. § 1-304"), Krishmar-Junker asserts that the "agreement between [Krishmar-Junker] and [Kingline] contained no provisions and is ambiguous regarding the poor conduct and service standards which [Kingline] provided." (Id.). Krishmar-Junker

9

alleges that Kingline "has failed to discharge contractual responsibilities in a competent manner, which has frustrated [her] purpose of purchasing a brand-new tractor, caused significant financial hardship onto [her], and severely disappointed her expectations by causing emotional distress." (Id.). Krishmar-Junker also alleges that Kingline has "dismissed" its "dealer-customer relationship" with her, "which further frustrates [her] use of the [Tractor] as the ability to receive future dealer support and services for the [Tractor] is terminated." (Id.). Krishmar-Junker states that because of Kingline's "breach, [she] has been deprived of the agreement's benefits, as she does not possess the [Tractor] in consideration for her continuing monthly payments." (Id. at 11). Krishmar-Junker further states that she "has suffered damages such as the loss of a brand-new tractor, damage to the tractor-fitted attachments for use with the tractor, harm to her property through overgrowth which attracts vermin and theft, and a loss of trees." (Id.).

In count four ("Deceptive Trade Practices – Ala. Code § 8-19-5(27)"), Krishmar-Junker alleges that Kingline "misrepresented the quality of work performed and knowingly or willfully denied or ignored the existence of material defects inflicted by [its] repair services." (Id.). Krishmar-Junker also alleges that Kingline made false statements to the police about her character and conduct in order to harass and defame her, cover up for its improper

business practices and questionable repairs, avoid the need to provide reasonable service, and "unjustly bar customer relations" with her. (Id.). Krishmar-Junker "believes that the unclear notes and repairs" provided by Kingline evidence "an intent to defraud [Krishmar-Junker] and the insurance company." (Id.). Krishmar-Junker states that Kingline initially represented to her that the Tractor's issue was caused by a simple paint error but instead performed extensive repairs on the Tractor without ever explaining why such extensive work was needed. (Id. at 12). Krishmar-Junker alleges that Kingline "maliciously bars" her from inspecting and "personally receiving" her Tractor in order "to conceal faulty workmanship and avoid responsibility for the damages." (Id.). Krishmar-Junker asserts that Kingline has "maliciously ignored" her as a customer, "as she has not received any direct communications from [Kingline] since August 5th, 2022." (Id.).

In count five ("Magnusson-Moss Warranty Act – 15 U.S.C. § 2301 et seq."), Krishmar-Junker alleges that she "is a consumer who purchased the [Tractor] from [Kingline] as an individual." (Id. at 13). Specifically, Krishmar-Junker states that she purchased the Tractor, "including air conditioning and radio, for consumer use to maintain the 26-acres of land adjacent to her home." (Id.). Krishmar-Junker states that Kingline "acted as a supplier and warrantor in supplying the [Tractor], including warranties, to [Krishmar-Junker]." (Id.). Krishmar-Junker

11

alleges that Kingline "has failed to conform to the written warrant under a reasonable time period and without charge, has breached an implied warranty under Alabama law, and has breached a duty imposed by the Uniform Commercial Code." (Id.).

In count six ("Punitive Damages – Ala. Code § 6-11-20"), Krishmar-Junker asserts that Kingline "engaged in malice by intentionally conducting wrongful acts without just cause or excuse," including defaming her character, contacting the police department "to intentionally inflict emotional distress" on her, and "maliciously mistreating" her "and referring to her as the 'other woman with a funny accent.'" (Id.). Krishmar-Junker further asserts that Kingline "engaged in wantonness by conducting a reckless repair in disregard of [her] rights and safety" and "consciously subjects [her] to cruel and unjust hardship by refusing to honor contractual obligations in conscious disregard of [her] rights and ongoing financial obligations." (Id. at 14).

For relief, Krishmar-Junker requests "[r]escission of the contract involved herein," the "refund of [her] made payments and the cessation of future payments," "[i]ncidental and consequential damages . . . such as the high cost of restoring the land to its maintain condition, the loss of fruit trees, damage to new attachments due to the inability to properly store and maintain them, the cost of services and maintenance, and other incidences in the sum to be determined," "compensatory and treble damages,"

"punitive damages," "fees and costs," and "any other relief which the Court deems just and proper." (Id. at 14-15).

On December 22, 2023, Kingline filed the instant motion to dismiss Krishmar-Junker's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 8). Krishmar-Junker timely filed a response in opposition to the motion to dismiss (Doc. 10), and Kingline filed a timely reply. (Doc. 11). Thus, Kingline's motion is ripe for resolution.

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Federal courts are courts of limited jurisdiction and are authorized by Constitution and statute to hear only certain types of actions. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997).

Federal district courts have subject matter jurisdiction in two primary types of cases. First, district courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.

13

§ 1331.  A plaintiff properly invokes federal question jurisdiction under 28 U.S.C. § 1331 when she "pleads a colorable claim 'arising under' the Constitution or laws of the United States." Arbaugh v. Y&H Corp., 546 U.S. 500, 513 (2006).  Second, district courts have diversity jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of costs and interest.  28 U.S.C. § 1332(a)(1).  A plaintiff invokes diversity jurisdiction under 28 U.S.C. § 1332 when she "presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount [of] $75,000." Arbaugh, 546 U.S. at 513.

A "plaintiff bears the burden of affirmatively asserting facts that show the existence of jurisdiction and including 'a short and plain statement of the grounds upon which the court's jurisdiction depends.'"  DeRoy v. Carnival Corp., 963 F.3d 1302, 1311 (11th Cir. 2020) (citing Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994); Fed. R. Civ. P. 8(a)).  Where federal jurisdiction is invoked based upon diversity of citizenship, the complaint's factual allegations "must include the citizenship of each party, so that the court is satisfied that no plaintiff is a citizen of the same state as any defendant." Travaglio v. Am. Exp. Co., 735 F.3d 1266, 1268 (11th Cir. 2013).  An allegation of "[r]esidence alone is not enough." Id. at 1269.  For a natural person, "[c]itizenship is equivalent to 'domicile' for purposes of

diversity jurisdiction." McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam). "A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." Id. at 1257-58 (quotations omitted). For purposes of diversity jurisdiction, corporations are deemed citizens of "the states of their incorporation and their principal place of business." Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 n.1 (11th Cir. 2004) (per curiam) (citing 28 U.S.C. § 1332(c)(1)).

"When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 87 (2014). To justify dismissal, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount[.]" Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003); see also Kelly v. Fleetwood Enters., Inc., 377 F.3d 1034, 1037 (9th Cir. 2004) (noting that the legal certainty test applies to suits in diversity and Magnuson-Moss Warranty Act claims). However, where "jurisdiction is based on a claim for indeterminate damages, the . . . 'legal certainty' test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing

jurisdiction meets the jurisdictional minimum." McKinnon Motors, 329 F.3d at 807. A prayer for damages is indeterminate when it "does not allege a specific amount of damages." Id. at 808 (quoting St. Paul Reinsurance Co. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998)).

A party may move to dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) challenge to subject matter jurisdiction may take the form of a facial attack or a factual attack on the complaint. Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (per curiam). In a facial attack, the court must evaluate whether the complaint alleges a sufficient basis for subject matter jurisdiction, while accepting all factual allegations as true for purposes of the motion. Id. at 1529. In contrast, a factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings. Id. In a factual challenge to subject matter jurisdiction, the court may consider matters outside the pleadings and weigh conflicting evidence, and no presumption of truthfulness attaches to the plaintiff's allegations. Id.

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Dismissal for lack of subject matter

jurisdiction "must be without prejudice." McIntosh v. Royal Caribbean Cruises, Ltd., 5 F.4th 1309, 1313 (11th Cir. 2021).

**B. Motion to Dismiss for Failure to State a Claim.**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This necessarily requires that a plaintiff include factual allegations that plausibly support each essential element of her claim. Randall v. Scott, 610 F.3d 701, 708 n.2 (11th Cir. 2010). Also, "[i]f the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6)." LeFrere v. Quezada, 582 F.3d 1260, 1263 (11th Cir. 2009).

When evaluating a motion to dismiss under Rule 12(b)(6), a court "must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Almanza v. United Airlines, Inc., 851 F.3d 1060, 1066

(11th Cir. 2017).  That said, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth."  Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011).  A complaint does not need detailed factual allegations, but it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.

A court reviewing a motion to dismiss must typically limit its consideration to the complaint and exhibits attached thereto. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam).  However, a "court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."  SFM Holdings, Ltd. v. Banc of Am. Secs., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); see also Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999) (stating that "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute").

**C.  *Pro Se* Litigation.**

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).  However, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to

rewrite an otherwise deficient pleading in order to sustain an action." Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quotation omitted). Even a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

### III. **DISCUSSION**

#### A. **Count One ("Negligence").**

Kingline first argues that Krishmar-Junker's negligence claim must be dismissed because "it attempts to turn a breach of contract claim into a tort claim, which is not permitted by Alabama law."[1] (Doc. 8 at 5). Kingline states that on July 29, 2021, Krishmar-Junker and Kingline each executed a "Warranty and Limitation of Liability Agreement" (the "NH Warranty"). (Id. at 1). Kingline attaches a copy of the NH Warranty as an exhibit to its motion to dismiss.[2] (Doc. 8-1). Kingline asserts that Krishmar-Junker's allegations arise from Kingline's "alleged failure to complete

---

[1] Both parties agree that Krishmar-Junker's tort and contract claims are governed by Alabama law; therefore, the Court will not *sua sponte* engage in a choice of law analysis and will apply Alabama law to those claims as the parties have done. See Cincinnati Ins. Co. v. Amerisure Ins. Co., 2012 U.S. Dist. LEXIS 129953, at *24 n.13, 2012 WL 4033724, at *6 n.13 (S.D. Ala. Sept. 12, 2012).

[2] The Court will consider the NH Warranty attached to Kingline's motion to dismiss because it appears to be central to the dispute, and Krishmar-Junker does not challenge its authenticity. See Harris, 182 F.3d at 802 n.2.

warranty repairs under the NH Warranty and cannot give rise to 'a tort-like cause of action for the breach of a duty created by a contract.'" (Doc. 8 at 5 (citation omitted)).

In response, Krishmar-Junker states:

> Plaintiff's negligence claim is justiciable, as in Alabama, "the line of distinction between actions in tort and contract is thin and often nebulous in many instances" Hamner v. Mutual of Omaha Ins. Co., 49 Ala. App. 214, 218 (Ala. Civ. App. 1972). Alabama courts have found that where a party fails to perform or meet specific obligations under a contract, such constitutes a breach of contract. However, where the defendant "does undertake to perform, his performance may be negligent, giving rise to a tort." Id. (quoting Vines v. Crescent Transit Co., 85 So. 2d 436, 439 (Ala. 1955). Within Alabama, if the duty breached arises from the contract itself, it is not in tort, but "if there is a negligent performance of a contractual duty or the negligent breach of a duty implied by law, such duty being not expressed in the contract, but arising by implication of law from the relation of the parties created by the contract, the action may be either in contract or tort." Hamner, 49 Ala. App. 214 at 218. In such instances, the Court must find whether the nature of the action arises from "nonfeasance [or] misfeasance" by examining the "gist or gravamen of the complaint." Id. Accordingly, Plaintiff's negligence claim should not be dismissed unless the Court finds that the Complaint does not allege misfeasance, where the Defendant negligently performed a contractual duty, over nonfeasance, where the Defendant has failed to perform. As presented in the facts of the Complaint, the occurrence of both is likely.

(Doc. 10 at 6-7).

As noted by Krishmar-Junker, "the line of distinction between actions in tort and contract is thin and often nebulous" under Alabama law. Hamner v. Mut. of Omaha Ins. Co., 270 So. 2d 87, 90 (Ala. Civ. App. 1972). "While 'an ordinary breach of contract

20

will not give rise to a tort,' '[i]t is possible for a tort to arise in Alabama out of a breach of a duty implied by or arising out of a contract.'"  Matthews v. Ankor Energy, LLC, 2018 U.S. Dist. LEXIS 136168, at *17-18, 2018 WL 3832851, at *5 (S.D. Ala. Aug. 13, 2018) (quoting Brown-Marx Assocs., Ltd. v. Emigrant Sav. Bank, 703 F.2d 1361, 1371 (11th Cir. 1983)).[3]

> Under Alabama law, there is a distinction between nonfeasance and misfeasance in the performance of a contract.  Nonfeasance—*i.e.* the failure to do what one has promised to do—carries no tort liability absent a duty to act apart from the promise made; however, misfeasance or negligent affirmative conduct in the performance of a promise can subject an actor to both tort and contract liability.

Glenn Const. Co., LLC v. Bell Aerospace Servs., Inc., 785 F. Supp. 2d 1258, 1293 (M.D. Ala. 2011); see Ex parte Certain Underwriters at Lloyd's of London, 815 So. 2d 558, 563 (Ala. 2001) ("Basically, the line of division between [an action in contract and an action in] tort in such instances is [the line between] nonfeasance and misfeasance.  If there is a defective performance there is a breach of contract and [there may also be] a tort.") (quoting Hamner, 270 So. 2d at 90); SCP Tuscaloosa, LLC v. Univ. House Tuscaloosa, LLC, 2019 U.S. Dist. LEXIS 64143, at *22, 2019 WL 1597884, at *8 (N.D.

---

[3] "The Brown-Marx panel distinguished between claims for breach of an obligation expressly set forth in the contract (which are not actionable in tort under Alabama law) and claims for breach of a duty implied by or arising out of the contract (which may be actionable in tort)."  Hardy v. Jim Walter Homes, Inc., 2008 U.S. Dist. LEXIS 26842, at *59, 2008 WL 906455, at *14 (S.D. Ala. Apr. 1, 2008) (citing Brown-Marx, 703 F.2d at 1371).

Ala. Apr. 15, 2019) ("[A] breach of the implied duty to use reasonable skill and diligence in performing a contractual duty can constitute negligence.") (citing <u>Sherrill v. Ala. Appliance Co.</u>, 197 So. 1, 4 (Ala. 1940)). "In these instances, involving misfeasance rather than nonfeasance, Alabama law requires courts to determine whether the action sounds in tort or contract by looking to the 'gravamen of the complaint.'" <u>Killough v. Monkress</u>, 2018 U.S. Dist. LEXIS 128846, at *24, 2018 WL 3641859, at *10 (N.D. Ala. Aug. 1, 2018) (quoting <u>Hamner</u>, 270 So. 2d at 90).

As an initial matter, it is not entirely clear whether Kingline – the dealer that sold the Tractor to Krishmar-Junker – is a party to the NH Warranty. Although the NH Warranty was signed by Krishmar-Junker as the purchaser and Kingline as the dealer, these signatures may have been for the purpose of confirming that Kingline reviewed certain information with Krishmar-Junker, and that Krishmar-Junker accepted the warranty terms and understood the safety precautions to take while using the Tractor. (<u>See</u> Doc. 8-1 at 2). The NH Warranty specifically states that it "is from CNH Industrial America LLC and in Canada, CNH Industrial Canada Ltd., both of which are referred to in this agreement as 'NH' for 'New Holland brand'." (<u>Id.</u> at 1). Under "What's Covered," the NH Warranty provides, in relevant part: "If a defect in material or workmanship is found in a unit and reported during the Warranty Period, NH will pay parts and labor costs to repair the defect if

the services are performed by an authorized NH dealer at the dealer's location." (Id. at 2).

Given the foregoing, the Court cannot at this juncture accept Kingline's assertion that Krishmar-Junker's negligence claim against it "is solely based on contractual duties[.]" (See Doc. 11 at 3). On the contrary, the claim appears to be based at least partly on the breach of a duty arising from, but independent of, the NH Warranty, which may be actionable in tort. See Brown-Marx, 703 F.2d at 1371; see also Dairyland Ins. Co. v. Gen. Motors Corp., 549 So. 2d 44, 46 (Ala. 1989), as modified on reh'g (Aug. 25, 1989) (recognizing a breach of warranty claim against a vehicle's manufacturer and a negligent repair claim against the dealership); Everett v. Brad Ragan, Inc., 2000 U.S. Dist. LEXIS 4124, at *5, 2000 WL 360240, at *2 (S.D. Ala. Mar. 28, 2000) (stating that "the existence of a warranty agreement does not preclude a negligent repair claim or negligent failure to train claim in the absence of language limiting a purchaser's remedies").

Viewed in a light most favorable to Krishmar-Junker, her negligence claim is at least partly based on Kingline's alleged misfeasance or negligent affirmative conduct in the performance of duties arising out of (but not expressly set forth in) the NH Warranty. Moreover, Kingline does not challenge the legal propositions set out in Krishmar-Junker's response or specifically

contest their relation to the complaint's allegations, and the Court declines to perform Kingline's work on its behalf.

As an additional ground for dismissal of Krishmar-Junker's negligence claim, Kingline argues that the NH Warranty "excludes a separate remedy in tort." (Doc. 8 at 6). Kingline cites the NH Warranty's exclusive remedy clause, which provides:

EXCLUSIVE REMEDY

THE REMEDY OF REPAIRING A DEFECT IN MATERIALS OR WORKMANSHIP AT A NH DEALERSHIP UNDER THE TERMS OF THIS WARRANTY IS THE PURCHASER'S EXCLUSIVE REMEDY AND IS IN LIEU OF ANY OTHER REMEDY OTHERWISE AVAILABLE.

(Id. (citing Doc. 8-1 at 2)). Kingline interprets this provision to mean that Krishmar-Junker "agreed to waive any purported negligence claim arising out of warranty work performed by Kingline in lieu of the 'REMEDY OF REPAIRING A DEFECT IN MATERIALS OR WORKMANSHIP AT A NH DEALERSHIP.'" (Id.). Krishmar-Junker responds that the NH Warranty's exclusive remedy clause does not bar her negligence claim because Kingline has failed to provide the remedy of repairing the Tractor's defects, and thus the NH Warranty has failed of its essential purpose. (Doc. 10 at 7-9).

The Court notes again as a preliminary matter that it is unclear whether Kingline is a party to the NH Warranty. Kingline (and Krishmar-Junker) appear to assume that Kingline is a party to the NH Warranty, but the NH Warranty itself does not clearly support this assumption. "Under Alabama law, a nonparty to a contract can seek to enforce the contract by establishing that

24

'the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental, benefit upon the third party.'"  Chester Engineers, Inc. v. Sideridraulic Sytems S.p.A., 2011 U.S. Dist. LEXIS 43577, at *16, 2011 WL 1475883, at *5 (S.D. Ala. Mar. 29, 2011) (quoting Ex parte Stamey, 776 So. 2d 85, 92 (Ala. 2000)), report and recommendation adopted, 2011 U.S. Dist. LEXIS 41864, 2011 WL 1475788 (S.D. Ala. Apr. 18, 2011).  As noted, it is not clear whether Kingline (the selling dealer) is a party to the NH Warranty, nor is it clear that the contracting parties intended the exclusive remedy clause to preclude a purchaser's tort claim against a dealership relating to its performance of warranty repairs.

Assuming *arguendo* that the NH Warranty's exclusive remedy clause applies to Krishmar-Junker's negligence claim against Kingline, the claim still cannot be dismissed at the pleading stage because the complaint's allegations plausibly suggest that the warranty failed of its essential purpose.  "Alabama law 'clearly permits' a seller to limit, or exclude by contract, the remedies available."  Jim Walter Res., Inc. v. Downard Longwall, Inc., 2008 U.S. Dist. LEXIS 128959, at *22 n.24, 2008 WL 11380012, at *9 n.24 (N.D. Ala. Jan. 16, 2008).  "A contract limitation of remedies to repair or replacement is allowed under proper circumstances."  Volkswagen of Am., Inc. v. Harrell, 431 So. 2d 156, 164 (Ala. 1983).  However, "Alabama law is clear that where a warranty fails

of its essential purpose, a buyer is not constrained by its limitation of remedy provisions." McCollough Enters., LLC v. Marvin Windows & Doors, 2010 U.S. Dist. LEXIS 128102, at *38, 2010 WL 5014670, at *8 (S.D. Ala. Dec. 2, 2010); see Ala. Code § 7-2-719(2) ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title."). "A repair or replace warranty fails its essential purpose if the warrantor refuses to repair or replace the defect or does not repair or replace it within a reasonable time." LaFerrera v. Camping World RV Sales of Birmingham, 171 F. Supp. 3d 1257, 1271 (N.D. Ala. 2016); see also Burbic Contracting Co., Inc. v. Cement Asbestos Prod. Co., 409 So. 2d 1, 5 (Ala. 1982) ("A limitation of remedies to repair or replace goods fails in its essential purpose if the seller does not provide goods which conform to the contract within a reasonable time."). "The main point of this doctrine . . . is to prevent a warrantor from limiting its customers solely to the remedy of repair after it has become obvious to reasonable persons that the warrantor cannot or will not repair the machine in compliance with the limited warranty." Ex parte Miller, 693 So. 2d 1372, 1379 n.10 (Ala. 1997).

In the complaint, Krishmar-Junker alleges that on both occasions she presented to Kingline's Summerdale facility "to receive" the Tractor, she was told "to leave" by Kingline staff and left the facility without the Tractor. (Doc. 1 at 4-6).

Krishmar-Junker states that she called the New Holland Customer Relations team to report the events at the dealership and was advised to open a claim with New Holland's insurance company for the Tractor; however, after doing so, she received a response that "mechanic's vandalism" was not covered. (Id. at 6). Krishmar-Junker further states that Kingline refuses to allow Krishmar-Junker or her family members to pick up the Tractor from its facility. (Id. at 7). Krishmar-Junker alleges that she is unable to employ a third party to pick up the Tractor, and that Kingline has "effectively barred" her "from inspecting and picking up her [Tractor]." (Id.). Krishmar-Junker states that Kingline has not directly communicated with her since August 2022, nor has it responded to her communications. (Id.). She also alleges – albeit in connection with a different cause of action – that Kingline has "dismissed the dealer-customer relationship" with her and "terminated" her ability to receive future dealer support and services for the Tractor.[4] (Id. at 10). It is reasonable to infer from these allegations that Kingline has refused to provide Krishmar-Junker with her repaired Tractor within a reasonable time and in compliance with the NH Warranty, and that the warranty has

---

[4] In her response to Kingline's motion to dismiss, Krishmar-Junker states that because Kingline "operates the only New Holland dealership not only in the immediate area but also in the neighboring states, [her] ability to receive support for the Tractor is entirely frustrated." (Doc. 10 at 8-9).

thus failed of its essential purpose.  Accordingly, Kingline's motion to dismiss Krishmar-Junker's negligence claim is due to be denied.

### B.    Count Two ("Breach of Contract").

Kingline asserts that Krishmar-Junker's breach of contract claim must be dismissed because it "relates to the sales contract, not the NH Warranty" but "does not allege that the 'agreement for the sale of a new tractor' was breached by Kingline." (Doc. 8 at 6).  On the contrary, Kingline notes that Krishmar-Junker "admits" that she "paid $49,659.08 for the Tractor and Kingline delivered it."  (Id.).

Krishmar-Junker counters that Kingline "wrongfully construes the complaint's breach of contract claim into only applying to the sales contract, to the exclusion of the warranty."  (Doc. 10 at 9).  Krishmar-Junker further contends that the complaint alleges facts "which demonstrate a breach of contract for the sale[,]" including the allegation that Kingline "unlawfully retains the tractor, despite an initial delivery to Plaintiff's residence." (Id.).  Krishmar-Junker also asserts that the complaint "contains references to the warranty and to the insurance, which were both purchased concurrently with the sale of the tractor."  (Id. at 10).  Krishmar-Junker posits that she "would have no use for the insurance nor the warranty agreements if not for the sales agreement," and that both the sales agreement and the NH Warranty

are thus "intrinsic to this action." (Id.). Krishmar-Junker maintains that because she is proceeding *pro se*, her claim should be liberally construed "to consider breaches of both the sales and warranty agreement." (Id.).

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." Tangen v. Ideacom of the Gulf Coast, Inc., 590 F. App'x 836, 838 (11th Cir. 2014) (per curiam) (quoting Shaffer v. Regions Fin. Corp., 29 So. 3d 872, 880 (Ala. 2009)). Here, the complaint alleges that on July 29, 2021, Krishmar-Junker "entered into an agreement with [Kingline], to buy a brand-new New Holland Workmaster-75 Tractor for the amount of $49,659.08." (Doc. 1 at 2). The complaint also indicates that Kingline delivered the Tractor in accordance with the sales agreement. (Id.). In count two, Krishmar-Junker alleges that she and Kingline "were parties to an agreement for the sale of a new tractor" but makes no mention of the NH Warranty. (See id. at 9-10). While the complaint vaguely references a warranty, it provides no specific information regarding its terms or parties. (See id. at 2-3, 13). As noted *supra*, it is not clear that Kingline was a party to the NH Warranty, and the complaint makes no such direct allegation. And, although the Court must construe Krishmar-Junker's *pro se* complaint liberally, the Court is not at liberty

"to rewrite an otherwise deficient pleading in order to sustain an action." See Campbell, 760 F.3d at 1169 (quotation omitted).

Ultimately, the Court agrees with Kingline that "the sales agreement is the only contract made the basis of" Krishmar-Junker's breach of contract claim as it is pled in the complaint, and that the complaint alleges no facts showing a breach of the sales agreement for the Tractor. (See Doc. 11 at 4). Accordingly, Kingline's motion to dismiss count two is due to be granted, and Krishmar-Junker's breach of contract claim is due to be dismissed without prejudice and with leave to replead.

### C. Count Three ("Breach of Implied Covenant of Good Faith & Fair Dealing – U.C.C. § 1-304").

Kingline asserts that Krishmar-Junker's third cause of action must be dismissed because Alabama does not recognize a standalone claim for breach of the implied covenant of good faith and fair dealing. (Doc. 8 at 7-8). Krishmar-Junker attempts to distinguish the authority cited by Kingline and contends that "an application of the duty of Good Faith and Fair Dealing would be appropriate to resolve the issues arising from the Defendant's improper acts and omissions." (Doc. 10 at 11-13).

Alabama recognizes "the general rule that every contract carries with it an implied-in-law duty of good faith and fair dealing." Hilley v. Allstate Ins. Co., 562 So. 2d 184, 190 (Ala. 1990). "This duty provides that neither party will interfere with

the rights of the others to receive the benefits of the agreement."
Id.   An "obligation of good faith in . . . performance and
enforcement" is also imposed on contracts by statute.   See Ala.
Code § 7-1-304 (originally enacted as Ala. Code § 7-1-203) ("Every
contract or duty within this title imposes an obligation of good
faith in its performance and enforcement.").

Krishmar-Junker expressly bases her claim in count three on
the statutory good faith provision in Alabama's Uniform Commercial
Code.   (See Doc. 1 at 10; Doc. 10 at 11).   However, it is well-
established that "Alabama's statutory good faith obligation, § 7-
1-304, does not create a cause of action, either in tort or in
contract."   Whitney Bank v. Murphy, 2013 U.S. Dist. LEXIS 40046,
at *18, 2013 WL 1191235, at *5 (S.D. Ala. Mar. 22, 2013); see
Tidmore Oil Co. v. BP Oil Co./Gulf Prod. Div., a Div. of BP Oil
Co., 932 F.2d 1384, 1391 (11th Cir. 1991) ("In Alabama, the good
faith provision of the Uniform Commercial Code, Ala.Code Ann. § 7-
1-203, does not create a cause of action either in contract or in
tort."); Gov't St. Lumber Co. v. AmSouth Bank, N.A., 553 So. 2d
68, 72 (Ala. 1989) (holding that "§ 7-1-203, does not create a
substantive cause of action in tort" and does not "support a claim
in contract").   This is because "the statute was intended to be
directive, not remedial."   Camp v. Ala. Telco Credit Union, 2013
U.S. Dist. LEXIS 67418, at *9, 2013 WL 2106727, at *3 (N.D. Ala.
May 13, 2013); see Gov't St. Lumber, 553 So. 2d at 72 (stating

"that failure to act in good faith in the performance or enforcement of contracts arising out of Title 7A does not state a claim for relief that may be granted in Alabama, since § 7-1-203 is directive rather than remedial"); Tanner v. Church's Fried Chicken, Inc., 582 So. 2d 449, 452 (Ala. 1991) ("This Court has clearly and specifically held that a duty of good faith in connection with a contract is directive, not remedial, and that therefore an action will not lie for breach of such a duty.") (citing Gov't St. Lumber, 553 So. 2d at 72).

Assuming *arguendo* that count three could be liberally construed to assert a claim under Alabama's common law duty of good faith and fair dealing, it would still fail to state a claim upon which relief could be granted. In Alabama, "bad faith is not actionable absent an identifiable breach in the performance of specific terms of the contract . . . and there is no contractual cause of action for breach of an implied duty of good faith that nebulously hovers over the contracting parties, free from the specific terms of the contract." Lake Martin/Ala. Power Licensee Ass'n, Inc. v. Ala. Power Co., 601 So. 2d 942, 945 (Ala. 1992). Thus, "if a plaintiff's breach of contract claim fails to allege a specific breach, an accompanying bad faith claim necessarily fails as well." Goostree v. Liberty Nat'l Life Ins. Co., 421 F. Supp. 3d 1268, 1276 (N.D. Ala. 2019); see also Fed. Home Loan Mortg. Corp. v. Anchrum, 2015 WL 2452775, at *8 (N.D. Ala. May 22,

2015) ("[A] contract claim for breach of an implied covenant of good faith and fair dealing provides no remedy separate and apart from the breach of a specific contract provision. Unless a party to a contract can point to a breach of a *specific* provision in the contract, there is no breach of an implied duty. But if the party is able to point to a breach of a specific provision in the contract, that breach itself supports a claim for breach of contract without the necessity of a 'nebulously hover[ing]' implied covenant. Because the implied covenant is 'directive, not remedial,' it provides no separate cause of action.") (emphasis in original). Krishmar-Junker's complaint fails to clearly specify which "agreement" she believes gives rise to the obligation of good faith and fair dealing on the part of Kingline. Moreover, the Court has already recommended dismissal of Krishmar-Junker's breach of contract claim for failure to allege any specific breach of the sales contract for the Tractor. Krishmar-Junker cannot state a nebulous cause of action for breach of an implied duty of good faith and fair dealing that is free from the specific terms of any contract. See Lake Martin, 601 So. 2d at 945; Goostree, 421 F. Supp. 3d at 1276 ("Here, the court has already dismissed Plaintiffs' contract claim for failure to allege a specific breach. Plaintiffs ask the court to find a nebulous cause of action that hovers outside each of the 15 agreements. The court cannot make

this finding and must . . . DISMISS Plaintiffs' breach of an implied covenant of good faith and fair dealing claim.").

Nor can Krishmar-Junker state a tort claim against Kingline for failing to act in good faith in performing a contract. "Although every contract contains either an express or an implied covenant that the parties will act in good faith in performing the contract, in Alabama *only insurance contracts* give rise to a duty imposed by law on which a tort claim for bad faith performance can be based." Grant v. Butler, 590 So. 2d 254, 256 (Ala. 1991) (emphasis added). The Alabama Supreme Court has "consistently declined . . . to extend to the area of general contract law the tort of bad faith that [it] ha[s] recognized in the context of insurance contract cases." Id. Because this case does not involve an insurance contract, Krishmar-Junker cannot state a tort claim for bad faith performance by Kingline. Accordingly, Kingline's motion to dismiss count three is due to be granted, and Krishmar-Junker's claim for breach of Alabama's statutory good faith obligation is due to be dismissed with prejudice.

**D.  Count Four ("Deceptive Trade Practices – Ala. Code § 8-19-5(27)").**

Kingline argues that Krishmar-Junker's claim under the Alabama Deceptive Trade Practices Act ("ADTPA") is time-barred by the ADTPA's one-year statute of limitations. (Doc. 8 at 8-9). Kingline asserts that Krishmar-Junker discovered or reasonably

should have discovered the acts or practices which are the subject of her claim on or before September 13, 2022, the date she filed a complaint against Kingline with the Attorney General of Alabama. (Id. at 9). Since Krishmar-Junker did not file this action until November 14, 2023, more than a year later, Kingline asserts that her ADTPA claim is time-barred. (Id.).

In response, Krishmar-Junker states that before "filing an action under the ADTPA, the claimant must mail a written demand for relief 'reasonably describing the unfair or deceptive act' to the prospective respondent, who then has 15 days to address or reject the claim." (Doc. 10 at 13 (quoting Ala. Code § 8-19-10(e)). Krishmar-Junker asserts that the one-year limitation period did not begin to run "until after [Kingline] failed to respond to the written notice." (Id.). Thus, Krishmar-Junker contends that the statute of limitations began to run in January 2023, after Kingline failed to respond to her letter dated December 21, 2022, and that her ADTPA claim is therefore timely. (Id. at 13-14).

"Among other things, the ADTPA declares unlawful the act or practice of '[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.'" Jones v. Coty Inc., 362 F. Supp. 3d 1182, 1212 (S.D. Ala. 2018) (quoting Ala. Code § 8-19-5(27)). "The ADTPA's statute of limitations provides that '[n]o action may be brought

35

under this chapter more than one year after the person bringing the action discovers or reasonably should have discovered the act or practice which is the subject of the action.'" Collins v. Davol, Inc., 56 F. Supp. 3d 1222, 1228 (N.D. Ala. 2014) (quoting Ala. Code § 8-19-14). "Under the ADTPA, a plaintiff must communicate a written demand to proposed respondent at least 15 days prior to the filing of any action." Kornegay v. Beretta USA Corp., 614 F. Supp. 3d 1029, 1035 (N.D. Ala. 2022) (citing Ala. Code § 8-19-10(e)); see Holmes v. Behr Process Corp., 2015 U.S. Dist. LEXIS 155042, at *6 n.2, 2015 WL 7252662, at *2 n.2 (N.D. Ala. Nov. 17, 2015) (noting that "written notice of demand as required by Ala. Code § 8-19-10(e) . . . is a condition precedent to filing a suit under the ADTPA").

There is no dispute that Krishmar-Junker discovered or reasonably should have discovered the acts and practices which are the subject of her ADTPA claim more than one year before she filed the instant action. Krishmar-Junker attempts to avoid dismissal by positing that the ADTPA's one-year limitation period was not triggered until after she complied with the pre-suit demand requirements of Ala. Code § 8-19-10(e). (Doc. 10 at 13-14). However, Krishmar-Junker cites no legal authority to support her position, which conflicts with the plain language of the ADTPA's statute of limitations. Because it is apparent from the face of the complaint that Krishmar-Junker commenced this action more than

one year after she discovered or reasonably should have discovered the acts and practices which are the subject of her ADTPA claim, Kingline's motion to dismiss count four is due to be granted, and Krishmar-Junker's ADTPA claim is due to be dismissed with prejudice.

### E. Count Five ("Magnusson-Moss Warranty Act — 15 U.S.C. § 2301 et seq.").

Kingline argues that Krishmar-Junker's Magnuson-Moss Warranty Act ("MMWA") claim in count five must be dismissed for lack of subject matter jurisdiction because it does not satisfy the MMWA's amount in controversy requirement. (Doc. 8 at 10-11). The MMWA establishes a private right of action for "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). "While a claim under the Magnuson-Moss Warranty Act would normally 'arise under' a federal statute for purposes of 28 U.S.C. § 1331, the specific jurisdictional provision precludes federal jurisdiction in the absence of an amount in controversy over $50,000.00." Nebus Fam. Ltd. P'ship v. Newmar Corp., 2011 U.S. Dist. LEXIS 7925, at *2, 2011 WL 308175, at *1 (M.D. Fla. Jan. 27, 2011).

The statute provides that a claim under the MMWA is not cognizable in federal court if "the amount in controversy is less

than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(B). In determining the amount in controversy under § 2310(d)(3)(B), courts should only look to the actual claim brought under the MMWA. See Boyd v. Homes of Legend, Inc., 188 F.3d 1294, 1296 n.5 (11th Cir. 1999). Neither attorneys' fees nor "damages flowing from any pendent state law claim" can be used to calculate that amount in controversy. See Ansari v. Bella Auto. Group, Inc., 145 F.3d 1270, 1272 (11th Cir. 1998). Punitive damages are also not available for a MMWA claim brought in Alabama. See Boyd, 188 F.3d at 1298-1300.

The Court agrees with Kingline that Krishmar-Junker's complaint, which seeks indeterminate damages with respect to her MMWA claim, does not plead facts establishing the jurisdictional minimum required under the MMWA. However, it is not clear that this deficiency cannot be properly remedied in an amended complaint. Accordingly, it is recommended that Krishmar-Junker's MMWA claim be dismissed without prejudice and with leave to amend. See Nebus, 2011 U.S. Dist. LEXIS 7925, at *2, 2011 WL 308175, at *1 ("Plaintiff does not plead the jurisdictional minimum required under the Magnuson-Moss Warranty Act in the Complaint. Plaintiff will be provided an opportunity to do so, as it appears this is a pleading deficiency which may be properly remedied in an amended

complaint.  The Complaint will be dismissed without prejudice with leave to amend.").[5]

**F.   Count Six ("Punitive Damages – Ala. Code § 6-11-20").**

Kingline correctly asserts that Krishmar-Junker's final count must be dismissed because no cause of action for "Punitive Damages" exists in Alabama.  (Doc. 8 at 12).  "Under Alabama law, . . . punitive damages are merely a remedy, not a cause of action, so [Krishmar-Junker] may not assert a claim solely for punitive damages."  Barcal v. EMD Serono, Inc., 2016 U.S. Dist. LEXIS 35765, at *17, 2016 WL 1086028, at *5 (N.D. Ala. Mar. 21, 2016) (citing Ala. Code § 6-11-28 ("Nothing contained in this article shall be construed to grant or create a cause of action or right to recover

---

[5] Because count five is due to be dismissed with leave to amend based on Krishmar-Junker's failure to plead the requisite jurisdictional amount in controversy, the Court will not address Kingline's other arguments for dismissal of Krishmar-Junker's MMWA claim.  However, when drafting an amended complaint, Krishmar-Junker must keep in mind that "breach of warranty claims asserted under the Magnuson-Moss Warranty Act are based on underlying state law, so their success (or failure) depends on their sufficiency under the relevant state's law." Carder v. Graco Children's Prod., Inc., 558 F. Supp. 3d 1290, 1324 (N.D. Ga. 2021), on reconsideration in part, 2021 U.S. Dist. LEXIS 262822, 2021 WL 9721143 (N.D. Ga. Nov. 18, 2021).  To state a claim under the MMWA, "a plaintiff must also state a valid breach of warranty claim." Cardenas v. Toyota Motor Corp., 418 F. Supp. 3d 1090, 1110-11 (S.D. Fla. 2019).  "Failure to state a claim for breach of implied or express warranty under state law requires dismissal of the corresponding MMWA claim."  Valiente v. Unilever United States, Inc., 2022 U.S. Dist. LEXIS 222409, at *50, 2022 WL 18587887, at *18 (S.D. Fla. Dec. 8, 2022); see also Cardenas, 418 F. Supp. 3d at 1111 (noting that "courts routinely dismiss the correlating Magnuson-Moss Warranty Act claim" when a plaintiff fails to state a valid breach of warranty claim under state law).

punitive damages.")); see also Haynes v. Alfa Fin. Corp., 730 So. 2d 178, 181 (Ala. 1999) ("[T]here is no such thing as a 'claim of punitive damages.' Rather, there are claims on which our law authorizes the trier of fact to impose punitive damages if certain wrongfulness is proved by a sufficient weight of the evidence.") (citations omitted); Aldridge v. Ethicon, Inc., 2020 U.S. Dist. LEXIS 47694, at *5, 2020 WL 1308335, at *2 (S.D. Ala. Mar. 19, 2020) (where plaintiff purported to assert a claim for punitive damages, noting that it did not represent a separate cause of action under applicable law). Accordingly, Kingline's motion to dismiss count six is due to be granted, and Krishmar-Junker's purported punitive damages claim is due to be dismissed with prejudice.

### G. Leave to Amend.

In general, a *pro se* plaintiff should be given at least one opportunity to file an amended complaint that states a claim for relief within the court's subject matter jurisdiction. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); Woldeab v. Dekalb Cty. Bd. of Educ., 885 F.3d 1289, 1291 (11th Cir. 2018) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.") (quotation omitted); Majd-Pour v. Georgiana Cmty. Hosp., Inc., 724 F.2d 901, 903 n.1

(11th Cir. 1984) (stating that "leave to amend should be freely granted when necessary to cure a failure to allege jurisdiction properly"). However, leave to amend may be denied if an amendment would be futile. Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam).

Kingline asserts that amendment of the complaint would be futile because Krishmar-Junker cannot establish subject matter jurisdiction. Specifically, Kingline asserts that Krishmar-Junker's complaint "established that the extent of [her] damage is, at most, the $49,659.08 she paid for the tractor." (Doc. 11 at 11-12). Thus, Kingline contends that federal question jurisdiction does not exist because Krishmar-Junker cannot show that she meets the MMWA's $50,000 jurisdictional threshold, and that diversity jurisdiction is absent because the amount in controversy in this action does not exceed $75,000. At this juncture, however, the Court cannot say that a more carefully drafted complaint could not adequately plead damages above the relevant jurisdictional thresholds. Accordingly, the Court finds that Krishmar-Junker should be granted leave to file an amended complaint.

IV. **CONCLUSION**

Based on the foregoing, the undersigned **RECOMMENDS** that Kingline's motion to dismiss (Doc. 8) be **GRANTED in part** and **DENIED in part**, as follows:

(Count One) Kingline's motion to dismiss Krishmar-Junker's negligence claim is due to be DENIED;

(Count Two) Kingline's motion to dismiss Krishmar-Junker's breach of contract claim is due to be GRANTED, and Krishmar-Junker's breach of contract claim in count two is due to be DISMISSED without prejudice to being repleaded;

(Count Three) Kingline's motion to dismiss Krishmar-Junker's claim for breach of the implied duty of good faith and fair dealing set forth in Ala. Code § 7-1-304 is due to be GRANTED, and Krishmar-Junker's claim in count three is due to be DISMISSED with prejudice;[6]

(Count Four) Kingline's motion to dismiss Krishmar-Junker's claim under the ADTPA is due to be GRANTED, and Krishmar-Junker's ADTPA claim in count four is due to be DISMISSED with prejudice;

(Count Five) Kingline's motion to dismiss Krishmar-Junker's claim under the MMWA in count five is due to be GRANTED, and Krishmar-Junker's MMWA claim is due to be DISMISSED without prejudice to being repleaded;

(Count Six) Kingline's motion to dismiss Krishmar-Junker's claim for punitive damages is due to be GRANTED, and Krishmar-Junker's punitive damages claim in count six is due to be DISMISSED with prejudice; and

---

[6] The claims that are due to be dismissed with prejudice should not be included in an amended complaint.

Kingline's motion to dismiss this action for lack of subject matter jurisdiction is due to be DENIED without prejudice to being reasserted after the filing of an amended complaint.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed

determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **17th** day of **April, 2024.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
